IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID M. HESS, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A., <br><br> Defendant. | Case No.: C-12-5799 JSC <br><br> **ORDER DISMISSING COMPLAINT WITHOUT LEAVE TO AMEND** |

Plaintiff, proceeding pro se, brings this case alleging various acts of fraud in the mortgage lending process.[1] The Court previously granted Plaintiff's application to proceed *in forma pauperis* ("IFP"), but dismissed his complaint with leave to amend for failure to state a claim. (Dkt. No. 7.) Plaintiff timely filed a First Amended Complaint ("FAC"). (Dkt. No. 8.)

Under 28 U.S.C. § 1915, the Court has a continuing duty to dismiss any case in which a party seeks leave to proceed *in forma pauperis* if the Court determines that the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief

---

[1] Pursuant to 28 U.S.C. § 636(c), Plaintiff consented to the jurisdiction of a United States magistrate judge (Dkt. No. 5), and Defendant, not yet served, is not a party to this case. *See Third World Media, LLC v. Does 1-1568*, 2011 WL 4344160 *3 (N.D. Cal. Sept. 15, 2011).

against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  For the reasons stated below, the Court finds that Plaintiff's FAC suffers from the same defects as the prior complaint and DISMISSES the amended complaint without leave to amend.

## ALLEGATIONS OF THE COMPLAINT

In October of 2004, Plaintiff obtained a home mortgage loan for $376,000 from Wells Fargo Bank for his home at 2217 South Mills Avenue, Lodi, California 95242.  In entering into the loan transaction, he relied on Wells' representation that the property was worth $470,000.  In August of 2012, after seeing media reports regarding predatory lending practices, Plaintiff became concerned that Wells had misrepresented the value of his home at the time of purchase.  He secured copies of Wells' appraisal documents and obtained copies of his county assessor's report for the year of the loan.  Upon comparison, he found that the Wells' appraisal represented the value of the subject property as $470,000 in 2004 while the county assessment showed its value as $379,789.  On November 9, 2012, he filed this lawsuit alleging Wells made material misrepresentations of the subject property's value and of the loan-to-value ratio during the mortgage lending process.

Although Plaintiff's Complaint does not clearly list the claims he asserts against Wells, the Court is able to discern five claims from the FAC: 1) violation of the Racketeering Influenced and Corrupt Organizations ("RICO") Act, based on Wells' fraudulent representations, under 18 U.S.C. §§ 1962(c), 1341, 1343; 2) California common law fraud; 3) violation of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), 12  U.S.C. §§  3331-3351; 4) and California Penal Code §532f (mortgage fraud).[2]  Plaintiff claims $687,916.59 in damages.

## LEGAL STANDARD

The standard for failure to state a claim under Section 1915(e) is equivalent to that under Federal Rule of Civil Procedure 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal under Rule 12(b)(6) may be based on either (1) the "lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a

---

[2] With the exception of a claim under 18 U.S.C. § 1001 (false statements), which the Court previously dismissed and is now absent from the FAC, these four claims are the same claims presented in Plaintiff's original complaint.

1 cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988). While "detailed factual allegations" are not required, a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the plaintiffs. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements' of a cause of action." *Iqbal,* 556 U.S at 663. Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

Additionally, Under Federal Rule of Civil Procedure 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In particular, the complaint must include specificity regarding the charged conduct, including the "who, what, when, where, and how." *Reed v. Wells Fargo Bank*, 2011 WL 4802542, at *3 (N.D. Cal. Oct. 11, 2011). "[T]he circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). When alleging that fraudulent statements were made, a plaintiff must identify the false statements and indicate why they were false. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

**DISCUSSION**

A.   **Civil RICO**

Plaintiff alleges Defendants engaged in a pattern of mail and wire fraud, violating 18 U.S.C. § 1962(c) of RICO. Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

3

racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).  In order to state a valid RICO claim under § 1962(c), a plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity."  *Jarvis v. Regan*, 833 F.2d 149, 151–52 (9th Cir. 1987). "Racketeering activity" is defined as any "act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year" or any act "indictable under" any specifically enumerated provision of Title 18 of the United States Code.  18 U.S.C. § 1961 (1).  Plaintiff appears to base his RICO action on underlying violations of 18 U.S.C. § 1341 (wire fraud) and 18 U.S.C. § 1343 (mail fraud) Defendant committed in participation with non-party Mortgage Electronic Registration System ("MERS").[3]

Plaintiff's RICO claim fails because it is barred by the statute of limitations.  Plaintiff also fails to allege facts sufficient to establish (1) the predicate acts of mail and wire fraud, and (2) that there has been a pattern of racketeering activity.

### 1. Statute of Limitations

Civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,* 483 U.S. 143, 156 (1987).  "The limitations period for civil RICO actions begins to run when a plaintiff knows or should know of the injury which is the basis for the action." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 365 (9th Cir. 2005). A plaintiff has constructive knowledge of a defendant's fraud when "it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Pincay v. Andrews*, 238 F.3d 1106, 1110 (9th Cir. 2001).

In response to the Court's previous Order dismissing his claim as time-barred, Plaintiff asserts that although his injury occurred in 2004, the statute should be tolled because he didn't recognize the "storm warnings" until 2012.  Specifically, Plaintiff alleges that "[his] first 'storm warning[]'" came when he watched a video on the website YouTube featuring the congressional

---

[3] To the extent Plaintiff alleges that California Penal Code § 532f (mortgage fraud) as part of the RICO violation, the Court finds that Section 532f cannot serve as the basis for a RICO claim because it does not involve murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance.

4

testimony of Professor William K. Black.  (Dkt. No. 8 ¶ 87.)  Plaintiff appears to contend that he was not required to engage in reasonable diligence to discover his injury until this video made him aware of wide-spread problems in the mortgage lending industry.

These allegations, however, do not support tolling the statute until 2012.  Plaintiff alleges his injury occurred when he took out a loan in 2004 to purchase his house for more than the house was worth.  Plaintiff contends the fraud is apparent from the discrepancy between the amount of his loan and the valuation of his home in the county assessor's records.  Further, Plaintiff concedes that "[d]uring the years 2005 through 2011 millions of objectively reasonable Americans, including Plaintiff, became aware through the Internet and through mainstream news media of the Housing Bubble and its collapse, and the resulting harm to Americans nationwide, including millions of homeowners experiencing the loss of equity in their home to the point that they owed more on their mortgage than their property was worth."  (Dkt. No. 8 ¶ 79.)  As Plaintiff's own description indicates, beginning in 2005 Plaintiff became aware of the equity problem facing "millions of homeowners," yet Plaintiff did not investigate his alleged injury until 2012.  Given Plaintiff's allegations, and his failure to allege that he did not have access to the county assessor's records in 2004 during loan origination or at any time thereafter, the Court cannot conclude that Plaintiff's constructive notice of the fraud began in 2012.  If Plaintiff was not on constructive notice at the time of loan origination in 2004, his FAC reveals that he became aware of the wide-spread equity crisis in 2005, thereby showing that he "had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud."  *Pincay*, 238 F.3d at 1110.  Plaintiff's contention that a reasonable person would not have been on reasonable notice beginning in 2005 because the major banks were in a position of considerable trust and power, (*see* Dkt. No. 8 ¶ 81), is unavailing.  *See Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987) (finding that once the plaintiffs had constructive notice of their injuries, "it was not reasonable for them to rely on reassuring comments from a broker"); *Kramas v. Security Gas & Oil Inc.*, 672 F.2d 766, 771 (9th Cir. 1982) ("[T]he question is not whether Kramas continued to repose confidence in [defendant] SEGO but whether in the exercise of reasonable diligence he should have been aware of defendants' allegedly fraudulent conduct."); *see also Pincay*, 238 F.3d at 1109 ("[C]onstructive notice begins to

run the statute of limitations regardless of any fiduciary relationship between the injured and the injurer.").

Further, Plaintiff has not alleged facts necessary to support equitable tolling. "[T]he doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period . . . until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the . . . action." *King v. State of California*, 784 F.2d 910, 915 (9th Cir. 1986). The focus of the equitable tolling analysis is "whether there was excusable delay by the plaintiff: If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (internal quotation marks omitted). Despite given an opportunity to amend, no facts in Plaintiff's FAC justify the delay in bringing this action.

### 2. Predicate Acts of Mail and Wire Fraud

Even if the statute of limitations had not run, Plaintiff has failed to state a claim based on mail or wire fraud. Under 18 U.S.C. §§ 1341 and 1343, it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails/wires or caused a use of the United States mails/wires in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud. *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399-400 (9th Cir. 1986). Allegations sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010).

Plaintiff has failed to sufficiently plead the first element, a "scheme or artifice to defraud." When alleging fraud based on a misrepresentation of material fact, a plaintiff must indicate what makes the allegedly fraudulent statement false. *In re GlenFed, Inc.*, 42 F.3d at 1548. As already discussed in its previous Order, Wells' $470,000 appraisal on October 2, 2004 appears to match precisely the sale price of the home, which the appraisal notes was sold on September 17, 2004 for

$470,000.[4]  (Dkt. No. 8 Ex. 14.)  Plaintiff's allegation of "scheme or artifice to defraud" is not plausible where Wells' appraisal of the property is exactly the same as the amount Plaintiff a month earlier had paid for the property on the open market.  *See Iqbal*, 556 U.S. at 663 (holding that a complaint must include sufficient facts to "state a claim to relief that is plausible on its face").  Plaintiff's FAC fails to address this issue despite the Court providing Plaintiff an opportunity to amend in order to do so.

Plaintiff's reliance on the county's assessment—which he contends "reflect[s] the government's position on the actual fair market value of the property during the particular year at issue," (Dkt. No. 1 ¶ 96)—is unavailing.  The county's assessment was apparently performed before Plaintiff purchased the property in late 2004.[5]  In California, property values are assessed based on the market value at the time the property changes ownership.  *See* Cal. Const. Art. XIIIA § 2(a).  Thereafter, a property's assessed value may only be adjusted upward by 2% a year under a single owner.  *Id.* at § 2(b).  Therefore, $379,789 does not reflect the market value of the subject property in 2004; it reflects the county's estimate of the value at the time the previous owner purchased the property, adjusted upward annually by a maximum of 2%.  Although the Court informed Plaintiff of this problem in its previous Order, Plaintiff's FAC remains unchanged with respect to this allegation.

### 3.   **Pattern of Racketeering Activity**

Plaintiff has also failed to adequately plead a "pattern" of racketeering activity.  At minimum, a plaintiff must allege that a defendant participated in two acts of racketeering activity within ten years of one another to constitute a "pattern." 18 U.S.C. § 1961(5). Plaintiff alleges that Wells engaged in mail and wire fraud with reference to his loan.  He also generally alleges that

---

[4] While there is a general rule against referencing evidence outside the four corners of the complaint, an exception to the rule arises where a plaintiff references and relies on a particular document as part of the moving allegations of the complaint.  In such cases, the court is justified in looking outside the four corners of the complaint, to the document itself if offered. See, e.g., *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

[5] The assessment shows a Cynthia Harris, presumably the previous owner, as the assessee. (Dkt. No. 8, Ex. 15.)  Plaintiff is the sole borrower on the 2004 deed of trust.

Wells partnered with MERS to, among other things, obtain inflated appraisals in connection with other mortgage loans. As warned in its previous Order, general allegations that an industry acted fraudulently do not meet the heightened pleading requirements of 9(b). Plaintiff has therefore again failed to state a second act constituting a pattern of racketeering activity.

**B.     California Common Law Fraud**

To the extent Plaintiff alleges a claim for common law fraud, it fails for much the same reasons as his claims for violations of RICO. The elements of a claim for fraud are: (1) a misrepresentation; (2) knowledge of the falsity of the misrepresentation; (3) reasonable reliance on the misrepresentation; and (4) resulting damages. *Cadlo v. Owens–Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004). Pursuant to California Code of Civil Procedure § 338(d), there is a three-year statute of limitations for an action for relief on the ground of fraud or mistake. As explained above, Plaintiff had constructive notice of the discrepancy between the 2004 assessment and appraisal at or near the time he purchased the subject property so the statute of limitations bars his fraud claim. Additionally, Plaintiff has not alleged facts that plausibly suggest that Wells' appraisal was a misrepresentation.

**C.     FIRREA**

Plaintiff alleges that under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") 12 U.S.C. §§ 3331-3351, Wells had a duty to obtain USPAP[6]-compliant appraisals as a precondition to the subject loan. (Dkt. No. 1 ¶ 141). Section 1331, the only section of FIRREA on which it appears Plaintiff may rely, requires qualified written appraisals in certain transactions.[7] As

---

[6] The USPAP, or the Uniform Standards and Professional Appraisal Practice, "are the generally accepted standards for professional appraisal practice in the United States." *Bolden v. KB Home*, 618 F. Supp. 2d 1196, 1202 (C.D. Cal. 2008) (internal quotation marks omitted).

[7] 12 U.S.C. § 3331 provides:

> The purpose of this chapter is to provide that Federal financial and public policy interests in real estate related transactions will be protected by requiring that real estate appraisals utilized in connection with federally related transactions are performed in writing, in accordance with uniform standards, by individuals whose competency has been demonstrated and whose professional conduct will be subject to effective supervision.

a threshold matter and as the Court noted in its previous Order, it does not appear that there is a private right of action under the FIRREA to enforce the USPAP. In *Bolden*, the court found only two provisions of FIRREA that provide a private right of action: 12 U.S.C. § 1441a(c)(11)(B) (permitting enforcement of lower-income occupancy requirements against purchasers of RTC property); and 12 U.S.C. § 1441a(q) (permitting enforcement of the statute's prohibition of discrimination against "whistleblowers"). 618 F. Supp. 2d at 1206. The court concluded that "there is no private right of action under the FIRREA to enforce the USPAP." *Id.*

Even if there were a private right of action, Plaintiff's FAC fails to allege facts that plausibly suggest that Wells did not obtain a USPAP-compliant appraisal. The "Appraiser's Certification" attached to the appraisal states that the appraisal was performed "in conformity with the [USPAP]." (Dkt. No. 1, Ex. 14 ¶ 7.) Moreover, as already discussed, the appraisal value is identical to sale price at which Plaintiff purchased the home the month prior to the appraisal. There are simply no facts that plausibly suggest any impropriety in regards to the appraisal.

**D.    Mortgage Fraud Under Cal. Penal Code §532f**

Although Plaintiff's FAC no longer specifically cites the California criminal statute relating to mortgage fraud, and instead cites numerous criminal mortgage fraud statutes from other states, the Court interprets Plaintiff's FAC as alleging a claim under California Penal Code § 532f. (*See* Dkt. No. 8 ¶¶ 22-23.) The Court, however, previously dismissed Plaintiff's claim under this statute without leave to amend, finding that Section 532f is a criminal statute that provides no private right of action. (Dkt. No. 7 at 8.)

## CONCLUSION

Generally, "[d]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by an amendment," *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009), and "a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). However, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso, U.S. ex rel. v. Gen.*

9

*Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (internal quotations and citations omitted).

Here, the Court previously granted Plaintiff leave to amend and instructed Plaintiff regarding the deficiencies in his complaint which he would need to cure on amendment. Plaintiff's FAC fails to articulate any cognizable legal claims against the Defendant. The Court therefore finds that the deficiencies in the FAC could not be cured by further amendment. The FAC is DISMISSED with prejudice.

The Clerk shall close this file.

 IT IS SO ORDERED.

Dated: March 4, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE